UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHEN ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 6172 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| GEORGE MOUSSA and CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION AND ORDER</u>

In this suit brought under 42 U.S.C. § 1983, Stephen Anderson alleges that George Moussa, a Chicago police officer, used excessive force to arrest him during a 2013 altercation that took place in DuPage County while Moussa was off-duty; Anderson also alleges that state law, 745 ILCS 10/9-102, requires the City of Chicago to foot the bill for any judgment he obtains against Moussa. Doc. 1. Discovery has closed, and a jury trial is set for May 22, 2017. Doc. 42. The City, but not Moussa, has moved for summary judgment. Doc. 45. The motion is granted.

### Background

The following facts are set forth as favorably to Anderson as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Moussa is a Chicago police officer. Doc. 55 at ¶ 11. In 2013, Anderson and his then-wife, Moussa's sister, began having marital trouble, which eventually led to their divorce. *Id*. at ¶¶ 2-4. Moussa's sister sought a restraining order against Anderson, alleging physical abuse.

1

Doc. 47-2 at 3, pp. 7-8; Doc. 55 at ¶ 10. Moussa believed the abuse allegations, though Anderson denies them. Doc. 47-3 at 6, p. 38; Doc. 55 at ¶ 6.

The events at issue took place on the morning of December 5, 2013, when both Anderson and Moussa went to the DuPage County courthouse in Wheaton, Illinois, to attend a hearing on the proposed restraining order. Doc. 55 at ¶¶ 16-17. Moussa was off-duty, wearing civilian attire—slacks and a suit jacket—and was not carrying any police gear, though he was carrying a personal firearm. Doc. 47-3 at 21, pp. 139-40; Doc. 55 at ¶¶ 11, 15, 28. He planned to testify on his sister's behalf. Doc. 47-3 at 8, p. 59; Doc. 55 ¶ 18.

After parking his car and walking toward the courthouse, Moussa spotted Anderson in the parking lot, approached his car, and, when Anderson rolled down his window, told him, "I want to talk to you." Doc. 55 at ¶ 19; Doc. 59 at ¶¶ 6-7; Doc. 54-3 at 8, pp. 22-23. Anderson put his car in park and got out. Doc. 59 at ¶ 7. The two men began to argue, with Moussa calling Anderson a bad father and "a wife beater" and Anderson telling Moussa he was "all talk, just like [his] dead father." Doc. 54-2 at 26, p. 97; Doc. 54-3 at 8, pp. 22-23; Doc. 55 at ¶¶ 20-21; Doc. 59 at ¶ 8. Anderson got back in his car, at which point Moussa said, "If you get out of your car like that again in front of me, I'm going to take you to jail today." Doc. 54-2 at 26, pp. 98-99; Doc. 59 at ¶ 9. Anderson pulled his car forward, parked it, and got out again. Doc. 59 at ¶ 10. The two men continued to exchange words. *Id.* at ¶ 11.

At some point, Moussa approached Anderson, grabbed his right arm, and attempted to throw him to the ground, sparking a physical struggle. Doc. 55 at ¶ 23; Doc. 59 at ¶ 11. Anderson tried to break free and get back into his vehicle, at which point Moussa told Anderson to "stop resisting." Doc. 54-2 at 29, p. 110-12; Doc. 59 at ¶¶ 12, 15. Moussa also grabbed Anderson's keys out of the ignition and threw them to the floor. Doc. 59 at ¶ 15. Moussa admits

that he was attempting to arrest Anderson, though he testified that he viewed it as a "citizen's arrest." Doc. 54-2 at 26, pp. 105-06; *id*. at 29, p. 112; Doc. 55 at ¶ 25. Anderson suffered multiple dislocated fingers during the struggle. Doc. 59 at ¶ 14.

A courthouse security guard approached, with DuPage County Sheriff officers some distance behind. *Id*. at ¶ 16. Moussa identified himself as a police officer to the security guard and asked if he had any handcuffs. Doc. 54-2 at 32, pp. 121-22; Doc. 59 at ¶ 16. The DuPage County sheriff officers, arriving on the scene, told Anderson to get out of the car, and he complied. Doc. 54-2 at 32, p. 123; Doc. 59 at ¶ 18. Moussa and the security guard each held one of Anderson's arms behind his back while the security guard secured the handcuffs around Anderson's wrists. Doc. 54-2 at 32, pp. 122-23; Doc. 59 at ¶ 17. Once Anderson was in the sheriff officers' custody, Moussa left the parking lot, entering the courthouse through a back door reserved for police officers. Doc. 59 at ¶ 20.

Anderson was charged with violating an order of protection, assault, and resisting/obstructing a police officer. *Id*. at ¶ 21. A Wheaton police department arrest report identified Moussa as the officer Anderson allegedly resisted. Doc. 54-4 at 2; Doc. 59 at ¶ 21.

**Discussion**

Section 9-102 permits a § 1983 plaintiff suing a municipal employee to recover any judgment from the municipal employer "only if the employee was acting within the scope of his employment, that is, only if the employer would be liable for the employee's acts under the principle of respondeat superior … ." *Wilson v. City of Chicago*, 120 F.3d 681, 685 (7th Cir. 1997); *see also Argento v. Vill. of Melrose Park*, 838 F.2d 1483, 1494 & n.18 (7th Cir. 1988) (holding that Section 9-102 makes Illinois municipalities liable for § 1983 torts committed by their employees within the scope of employment); *Kolar v. Cnty. of Sangamon*, 756 F.2d 564,

566 (7th Cir. 1985) (same). "To ascertain when an employee's conduct is within the scope of employment, the Illinois Supreme Court has adopted § 228 of the Restatement (Second) of Agency." *Copeland v. Cnty. of Macon*, 403 F.3d 929, 932 (7th Cir. 2005) (citing *Pyne v. Witmer*, 543 N.E.2d 1304, 1308-09 (Ill. 1989)).

Section 228 provides:

> Conduct of a servant is within the scope of employment if, but only if:
>
> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and place limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the master; and
>
> (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

*Copeland*, 403 F.3d at 932. Each of the first three criteria must be met to find that an employee acted within the scope of his employment. *See Adames v. Sheahan*, 909 N.E.2d 742, 755, 757 (Ill. 2009); *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 992 (Ill. 2007). Section 228 applies to police officers and their municipal employers. *See Doe v. City of Chicago*, 360 F.3d 667, 674 (7th Cir. 2004).

The first criterion—the acts must be of the kind the employee was employed to perform—is satisfied. Using physical force to restrain an unruly individual is among the tasks police officers perform for the City. *See Lombardi v. Range*, 2003 WL 21800071, at *5 (N.D. Ill. July 23, 2003) (holding that "handcuffing" satisfies this requirement). This conclusion does not change simply because the force was (allegedly) excessive and the arrest was (allegedly) unauthorized and improper. *See Javier v. City of Milwaukee*, 670 F.3d 823, 832 (7th Cir. 2012) ("[T]he scope of employment concept recognizes that an officer can exceed or abuse his authority—even intentionally or criminally—and still be acting within the scope of his

4

employment."); *Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987) ("We are of the view that those actions having an intimate bearing on the duties normally assigned to the office of employment, even though usurped or misused, must be considered as falling within the meaning of the term 'scope of employment.'"). The second and third criteria, however, are not satisfied.

As to the second, Moussa acted outside the time and place limits of his employment with the City. When the altercation broke out, Moussa was off-duty and well outside the Chicago Police Department's jurisdiction—the DuPage County courthouse is more than 20 miles outside the Chicago city limits—attending to a family matter on his personal time. The fact that Moussa was off-duty cuts against Anderson, *see Rivera v. City of Chicago*, 2005 WL 2739180, at *6 (N.D. Ill. Oct. 24, 2005) (holding that an officer's conduct fell outside time and space limits where he was "off-duty on the date in question" and not responding to an emergency), although off-duty status standing alone is not enough to put an officer's actions outside the scope of his employment. *See Brown v. King*, 767 N.E.2d 357, 361 (Ill. App. 2001) ("[A]n off-duty officer may often be found to be acting within the scope of his employment.") (collecting cases). The mere fact that Moussa was outside Chicago is not necessarily dispositive either. *See* Restatement (Second) of Agency § 234 (1958) ("One may be a servant, although a bad servant, in performing his master's business at a forbidden place if the place is within the general territory in which the servant is employed."). But Anderson points to no case in which a police officer who was *both* off-duty *and* far outside his jurisdiction was held to be acting within the scope of his employment. *See Karas v. Snell*, 142 N.E.2d 46, 49, 57-58 (Ill. 1957) (holding that scope of employment was an issue for the jury where a Chicago police officer was off duty but within the city limits when he shot the plaintiff); *Brown*, 767 N.E.2d at 359, 362-63 (allowing a Section 9-102 claim to proceed where "an off-duty deputy Cook County sheriff" shot a motorist on

Interstate 94 "near 29th Street," which is in Cook County); *Bauer v. City of Chicago*, 484 N.E.2d 422, 423-24, 426 (Ill. App. 1985) (holding that a suspended Chicago police officer was *not* acting within his scope of employment when discharging his weapon in the neighboring municipality of Cicero); *Fuery v. City of Chicago*, 2014 WL 1228718, at *1, 6-7 (N.D. Ill. Mar. 25, 2014) (holding that a reasonable jury could find that an off-duty Chicago police officer acted within the scope of his employment during a roadside altercation on Interstate 55 near "the Damen Street exit," which is in Chicago); *Coles v. City of Chicago*, 361 F. Supp. 2d 740, 742-43, 750 (N.D. Ill. 2005) (where an off-duty Chicago police officer shot the plaintiff at a nightclub, noting that "the City concede[d] that [the officer's] conduct … occurred within authorized space and time limits" and that the shooting victim was taken to Loretto Hospital, which is in Chicago, while giving no indication that the nightclub was outside the city).

Here, the fact that Moussa was far beyond the city limits points strongly to the conclusion that he was outside authorized space limits and thus not within the scope of his employment. As the Restatement explains:

> One engaged to drive an automobile in the City of New York is not in the service while driving in Albany; but a servant directed to drive from New York to Albany on the west side of the Hudson does not cease to be acting within the scope of the employment while driving on the east side. In all cases, it is a question of degree whether or not the difference in place is so great as to make the act done substantially different from the act authorized. If the driving is an independent journey as distinguished from a mere detour, the servant is upon an enterprise of his own and the master is not liable for his conduct during the trip.

Restatement (Second) of Agency § 234 (1958). This is not a case in which Moussa was conducting police business within the city limits and briefly strayed into a neighboring town. Rather, while off duty, Moussa traveled many miles outside Chicago to attend to family affairs in DuPage County—making him just like the Restatement's hypothetical New York City-based employee who embarks upon unauthorized business in Albany.

6

The point is reinforced by state statutory limits on police officers' authority and the Chicago Police Department's regulations. Under Illinois law, the general rule is that a police officer's authority extends only as far as the limits of his jurisdiction; subject to a handful of narrow and inapplicable exceptions, "[w]hen an officer is outside his jurisdiction, he does not possess any greater right to arrest than the right given to private citizens." *People v. Kirvelaitis*, 734 N.E.2d 524, 528 (Ill. App. 2000); *see* 725 ILCS 5/107-4 (setting forth the exceptions). Consistent with Illinois law, the Rules and Regulations of the Chicago Police Department—which Anderson himself invokes as definitive of "the authorized time and space limits" of Moussa's employment, Doc. 53 at 5—make clear that officers are tasked with "respond[ing] to … law enforcement needs in different parts *of the City*," and "protect[ing] … life, limb and property *in the City of Chicago*." Rules and Regulations of the Chicago Police Department ("CPD Regulations") at I.B.9 and II.A (Doc. 53-1 at 5, 7) (emphases added).

The fact that Moussa was operating outside both the time and the place limits of his employment suffices, standing alone, to establish that he was not acting within the scope of his employment. *See Adames*, 909 N.E.2d at 757 (holding that the failure to satisfy the "time and space limits" criterion forecloses a finding that an employee acted within the scope of his employment). But Anderson also has not satisfied the third criterion—that Moussa's behavior was motivated by a purpose to serve the City. The failure to satisfy that criterion is dispositive as well. *See Copeland*, 403 F.3d at 934 ("Only those actions that an employee does to somehow further the purpose of the employer are within the scope of employment."); *Doe*, 360 F.3d at 670 ("[A]n employer is liable for an intentional tort committed by its employee *only if* the tort was in furtherance of his employment … .") (emphasis added).

No reasonable jury could conclude that Moussa was motivated by a purpose to serve the City when he restrained Anderson in DuPage County—well outside the city limits—while off duty and in the midst of a familial dispute. *See Wilson*, 120 F.3d at 685 (explaining that a police officer acts outside the scope of his employment when he "commits a wrong designed to advance his purely private interests"). Anderson again cites the Department's governing regulations to argue otherwise, plucking out of context a statement that one goal of the Department is "[e]nforcement of all laws and ordinances." CPD Regulations at II.D (Doc. 53-1 at 7). But, as the regulations make clear elsewhere, the Department's mission is to enforce the laws *within the City*. The regulations explain that the "essential purpose of the Chicago Police Department" is to "serve[] the citizens of the City of Chicago" and that "it is to these citizens that it [is] ultimately responsible." *Id*. at I.A.1 (Doc. 53-1 at 3). The regulations add that "[t]he Department protects the right of all persons *within its jurisdiction* to be free from criminal attack, to be secure in their possessions and to live in peace." *Ibid*. (emphasis added). The enumerated "goals of the department," one of which Anderson highlights, similarly confine the Department's ambitions to "[p]rotection of life, limb, and property *in the City of Chicago*." *Id*. at II.A (Doc. 53-1 at 7) (emphasis added).

This is common sense. The Chicago Police Department's law enforcement responsibilities within the city limits are daunting enough as it is, and Wheaton has its own police force to handle matters in Wheaton. Only conduct that advances an officer's *employer*'s particular objectives, not those of other entities that may have related goals, satisfies the third criterion. *See Copeland*, 403 F.3d at 934 (holding that a correctional officer was not motivated to serve his employer, the county jail, when he purposefully allowed inmates to attack a pretrial detainee suspected of child abuse, reasoning that "[c]ourts, and courts alone, are charged with

imposing punishments" for criminal child abuse, while "jails merely provide the vehicle for doing so"). Anderson's contrary position—that when the regulations say "all laws and ordinances," they truly mean *all* laws and ordinances—would mean that a Chicago police officer serves the City's goals when he nabs a suspected wrongdoer *anywhere*—not just elsewhere in Illinois but also, presumably, while vacationing in Hawaii. An interpretation of the CPD Regulations that compels officers to enforce a littering ban in Honolulu cannot be correct.

The fact that Moussa identified himself as a police officer, gave police-like orders, and showed his badge after the altercation—in other words, the fact that Moussa held himself out as a police officer to some degree—also does not mean that his actions in DuPage County were undertaken in service to the City. *See Wolf v. Liberis*, 505 N.E.2d 1202, 1206 (Ill. App. 1987) (holding that an off-duty officer's "assertion to bystanders that he was 'on the job'" at the scene of a car accident did not place him within the scope of employment); *Rivera*, 2005 WL 2739180, at *1-2, 6 (holding that, where an officer identified himself as a police officer, stated that he had a search warrant, and wore a "badge pouch" during unauthorized off-duty misconduct, no reasonable jury could find that the officer acted on behalf of the police department); *Garcia v. City of Chicago*, 2003 WL 1715621, at *11-12 (N.D. Ill. Mar. 20, 2003) (holding that an off-duty police officer's assault on his girlfriend's ex-boyfriend was not "committed for any reason other than his pure personal benefit" and thus was not actuated by a purpose to serve the police department, even though he "flashed his badge and gun and announced that he was a cop").

Anderson contends that Moussa was acting "under color of" state law within the meaning of § 1983, and that therefore he necessarily was acting within the scope of his employment. Doc. 53 at 4. But "under color of" state law under § 1983 is not coextensive with "scope of employment" under Section 9-102. *See Wilson*, 120 F.3d at 684 (noting that the question

whether a police officer acted within the scope of his employment and the question whether he acted under color of state law are "closely related, although not identical"); *Coleman*, 814 F.2d at 1149 ("We do not confuse the 'under color of state law' element of section 1983 with the 'scope of employment' requirement of the indemnification statute. A finding of the first element is not necessarily a finding as to the latter."). Among other potentially salient differences, § 1983's color of law requirement concerns whether a police officer wielded—with or without authorization—*state* authority, *see Monroe v. Pape*, 365 U.S. 167, 171-72 (1961), while the scope of employment requirement for indemnification focuses on the culpability of the particular *local* government that issues the officer's paycheck. *See Copeland*, 403 F.3d at 932 (asking whether the individual defendant's conduct was "actuated by a purpose to serve his master, *the County of Macon*") (emphasis added); *Wilson*, 120 F.3d at 684 (framing the question as whether the officer "was acting within the scope of his employment *by the City*") (emphasis added).

Thus, even if Moussa was acting under color of state law, that would not by itself mean that he was acting within the scope of his employment. And because there is no *Monell* claim against the City, the court's conclusion that Moussa did not act within the scope of his employment relieves the City of any liability in this case. It is therefore unnecessary at this point to resolve whether Moussa acted under color of state law.

## Conclusion

For the foregoing reasons, the City's summary judgment motion is granted. This case will proceed to the trial of Anderson's case against Moussa.

April 13, 2017

United States District Judge